IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JUDITH VELOSKY, as
SPECIAL ADMINISTRATRIX
OF THE ESTATE OF
JOHN RAY GIBBS, DECEASED                                              PLAINTIFF

v.                         CASE NO. _____

UNITED STATES OF AMERICA                                              DEFENDANT

## COMPLAINT

COMES NOW, the Plaintiff Judith Velosky, as Special Administratrix of the Estate of John Ray Gibbs, Deceased, by and through her undersigned counsel, states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. At all relevant times herein, John Ray Gibbs, deceased, was a resident of the State of Arkansas, residing in Bentonville, Benton County, Arkansas.

2. Judith Velosky is the Special Administratrix of the Estate of John Ray Gibbs, Deceased, having been appointed by the Probate Division of the Circuit Court of Benton County, Arkansas on May 6, 2020. A copy of the Letters of Special Administration issued by the Benton County Clerk is attached hereto as "Exhibit A."

3. The Veterans Health Care System of the Ozarks, also known as the Fayetteville VA Medical Center (hereinafter referred to as "Fayetteville VA"), is operated by the Veterans Health Administration of the United States Department of Veterans Affairs, a department within the executive branch of the United States government.

4. The Fayetteville VA operates as a medical center that provides veterans with inpatient and outpatient medical care, including primary care, mental health care, surgical, dental, optometric, chiropractic, preventive health, non-institutional extended care, medical devices, and medical-related incidentals for veterans in twenty-three counties in Northwest Arkansas, Southwest Missouri, and Eastern Oklahoma.

5. The Fayetteville VA is located at 1100 North College Avenue in Fayetteville, Arkansas, within the territorial jurisdiction of the Western District of Arkansas, Fayetteville Division.

6. John Ray Gibbs served in the U.S. Army during the Vietnam War and later in the U.S. Air Force during Desert Shield and Desert Storm. Mr. Gibbs had been regaled with numerous awards and citations for his military service, including receiving the Presidential Air Medal, twice being awarded the Department of Defense Aerial Achievement Medal, and three times receiving the Department of the Air Force Commendation Medal. By virtue of his service in the United States military, Mr. Gibbs was eligible to and did receive medical care through the United States Department of Veterans Affairs.

7. This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* against the United States of America. Mr. Gibbs' personal injuries, and ultimate death, were proximately caused by the negligence, medical malpractice, wrongful acts and/or omissions of employees of the Fayetteville VA while acting in the course and scope of their employment.

8. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1346(b).

9. Venue is proper herein pursuant to 28 U.S.C. § 1402 because this is a civil action involving claims against the United States, and the acts and omissions giving rise to the claim occurred in the Western District of Arkansas.

10. Additionally, at all times referred to herein, Defendant, its agencies, employees, and agents were acting under the color of state and federal law, statutes, ordinances, regulations, policies, customs, practices, and usages of the United States of America, pursuant to their authority thereunder.

## FACTUAL ALLEGATIONS

11. John Ray Gibbs was a patient at the Fayetteville VA Hospital in Fayetteville, Arkansas. On or about November 2013, Mr. Gibbs' primary care physician became concerned when Mr. Gibbs presented with a knot on the right side of his neck. At the direction of his treating physician, Mr. Gibbs underwent a right supraclavicular lymph node biopsy. Pathology materials related to the biopsy were sent to Dr. Robert Morris Levy at the Fayetteville VA for examination and diagnosis.

12. Dr. Levy was a board-certified anatomic and clinical pathologist and a board-certified hematologist. Dr. Levy was issued a medical license by the Mississippi State Board of Medical Licensure in 1997 and, at various times, also held medical licenses in California, Florida, and Louisiana.

13. In 2005, the Fayetteville VA hired Dr. Levy as the Service Chief of Pathology and Laboratory Medicine Services. At all relevant times herein, Dr. Levy was an employee of the United States Department of Veterans Affairs, the Fayetteville VA, and the acts and/or omissions giving rise to these allegations occurred while Dr. Levy was acting within the course and scope of his office and employment.

14. Dr. Levy's duties as Service Chief of Pathology and Laboratory Medicine Services at the Fayetteville VA included, but were not limited to, rendering diagnoses after examining fluid and tissue samples obtained from Fayetteville VA patients; entering information into patients' medical records; assisting radiologists, surgeons, and others during needle biopsies; ensuring that quality standards were maintained for anatomical and clinic laboratory studies; and reporting errors that occurred at the Fayetteville VA pathology laboratory. Dr. Levy also chaired the tumor board and served on various oversight boards and medical committees at the Fayetteville VA. He was responsible for ensuring the compliance of the pathology department with the protocols and procedures of national laboratory and hospital accreditation agencies.

15. Doctors and other medical providers at the Fayetteville VA reasonably relied upon the accuracy of the diagnoses made by Dr. Levy and the integrity of the information he entered in patients' medical records which largely influenced decisions about the course of medical treatment for Fayetteville VA patients.

16. During Dr. Levy's employment at the Fayetteville VA, Dr. Levy abused drugs and alcohol, being regularly intoxicated while providing medical services to VA patients in the course and scope of his employment. Dr. Levy concealed being under the influences of alcohol by routinely ingesting 2-methyl-2-butanol, which masked the alcohol in his blood during routine drug and alcohol tests administered by the Fayetteville VA to its employees.

17. Oftentimes, while under the influence of drugs and alcohol in the course and scope of Dr. Levy's employment with the Fayetteville VA, Dr. Levy exhibited obvious symptoms of inebriation that were or should have been readily apparent to those around him, including fellow employees at the Fayetteville VA. In fact, Special Agent Kris Raper, Department of Veterans Affairs, Office of Inspector General, testified during Dr. Levy's criminal sentencing hearing that

Fayetteville VA employees suspected Dr. Levy of being intoxicated "on the job." *See* Transcript of Sentencing Hearing at 96:12-20, United States v. Robert Morris Levy, No. 5:19-CR-50059 (W.D. Ark. Jan. 21-22, 2021) ["Sentencing Transcript" hereinafter] (attached hereto as "Exhibit B"). Raper further testified that witnesses reported seeing Dr. Levy drinking in his car in the Fayetteville VA parking lot, "smelling like alcohol," and finding a cup containing alcohol next to a microscope. Sentencing Transcript, at 97:22-98:1; 100:4-9.

18. On or around February 4, 2014, Dr. Levy reviewed Mr. Gibbs' pathology materials and entered an incorrect diagnosis of diffuse large B cell lymphoma. Dr. Levy then falsified an entry in Mr. Gibbs' medical records by stating that a second pathologist at the Fayetteville VA had "reviewed this case and concur[red]" with Dr. Levy's diagnosis of diffuse large B cell lymphoma. *See* Plea Agreement at 7, United States v. Robert Morris Levy, No. 5:19CR50059-001 (W.D. Ark. June 1, 2020) ["Plea Agreement" hereinafter] (attached hereto as "Exhibit C").

19. In a plea deal entered into by Dr. Levy for the manslaughter of Mr. Gibbs, it was noted that "[Dr.] Levy's workup prior to finalizing the incorrect diagnosis was cursory and rudimentary." Plea Agreement, at 7.

20. On or about February 10, 2014, Dr. Levy changed Mr. Gibbs' diagnosis from diffuse large B cell lymphoma to another incorrect diagnosis of adenocarcinoma. In fact, Mr. Gibbs did not have either of the two cancers Dr. Levy diagnosed.

21. In reliance on Dr. Levy's diagnosis, doctors at the Fayetteville VA implemented an aggressive chemotherapy regiment consisting of cyclophosphamide, hydroxydaunorubicin, oncovin, and prednisone ("CHOP"). Mr. Gibbs did not respond to the treatment –a treatment designed to fight a cancer Mr. Gibbs did not have.

5

22. Mr. Gibbs' family noticed that he became weaker and more lethargic during these treatments and that his health quickly deteriorated. After Mr. Gibbs was admitted to the Fayetteville VA following this deterioration, his family was told that he was not going to leave the hospital alive.

23. Mr. Gibbs passed away at the Fayetteville VA on July 26, 2014.

24. Subsequent medical examinations and tests revealed that Mr. Gibbs had metastatic non-small cell carcinoma in his lymph nodes that resulted in lung and brain metastasis, a terminal diagnosis that took his life. The Fayetteville VA further noted that Dr. Levy's inaccurate diagnosis of Mr. Gibbs' cancer led to CHOPs chemotherapy, an inappropriate treatment for metastatic non-small cell carcinoma.

25. On or about August 2018, the family of Mr. Gibbs was notified by the Fayetteville VA that Dr. Levy's diagnosis was incorrect and that his erroneous pathology report had been modified to represent the accurate diagnosis of Metastatic Non-Small Cell Carcinoma.

26. The U.S. Department of Veterans' Affairs as a whole and VA employees at the Fayetteville VA had actual knowledge that Dr. Levy was routinely impaired while he was practicing medicine at the Fayetteville facility and in spite of this knowledge permitted Dr. Levy to continue practicing medicine.

27. On August 16, 2019, Dr. Levy was indicted for twelve counts of wire fraud, twelve counts of mail fraud, two counts of making false statements related to a health matter, two counts of making false statements to a federal investigator, and three counts of involuntary manslaughter, all related to conduct occurring during Dr. Levy's course and scope of employment at the Fayetteville VA and care of Mr. Gibbs.

28. On June 1, 2020, Levy pled guilty to one count of involuntary manslaughter for the death of Mr. Gibbs and one count of mail fraud, for which he received a twenty-year sentence. Regarding the death of Mr. Gibbs, Dr. Levy himself admitted his "diagnostic evaluation of John Ray Gibbs showed wanton disregard for patient well-being . . . resulting in the death of a former airman who might otherwise be 67 years old now." Sentencing Transcript, at 367:12-19.

## JURISDICTIONAL PREREQUISITES

29. All procedural prerequisites to filing this action have been satisfied, met, or otherwise waived, including the exhaustion of all administrative remedies under the Federal Tort Claims Act (FTCA).

30. Claim forms were filed on behalf of Mr. Gibbs by Judith Velosky, as Administratrix of Mr. Gibbs' Estate. The Standard Form 95 is attached to this Complaint as "Exhibit D" and incorporated herein by reference.

31. On or about June 11, 2020, Plaintiff's administrative claim for damage, injury, and death under the FTCA was received by the U.S. Department of Veterans Affairs.

32. Pursuant to 28 U.S.C. § 2675(a), no denial of the claim or settlement has been reached as of the date of filing this Complaint and therefore the administrative claim may be considered denied for the purpose of filing this pleading.

## COUNT I: MEDICAL MALPRACTICE

33. Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth verbatim herein.

34. The acts and/or omissions of the agents and/or employees of Defendant, through its agency with the Fayetteville VA, in failing to properly diagnose and treat Mr. Gibbs' metastatic non-small cell carcinoma is medical malpractice.

35. The acts and/or omissions of the agents and/or employees of Defendant, through its agency with the Fayetteville VA, in falsifying Mr. Gibbs' medical records is medical malpractice.

36. The acts and/or omissions of the agents and/or employees of Defendant, through its agency with the Fayetteville VA, in causing Mr. Gibbs' death is medical malpractice.

37. Through the employees and/or agents of Fayetteville VA, Defendant was negligent and such negligence was the proximate cause of the injuries and damages and ultimately the death of Mr. Gibbs.

38. In its treatment of Mr. Gibbs, Defendant, through its agents and/or employees, grossly failed to meet the applicable standard of care for medical providers in similar localities and under similar circumstances.

39. Defendant and its agents and/or employees breached the duty they owed to Mr. Gibbs, and this negligence deviated from the standard of care required for medical providers under these circumstances. The negligence consisted of, but is not limited to, the following:

   a. Defendant was negligent in the hiring, retention, and supervision of Dr. Levy in light of his history of known alcohol and substance abuse while on the job.

   b. Defendant failed to properly diagnose Mr. Gibbs.

   c. Defendant failed to properly review and follow up on the diagnosis assigned to Mr. Gibbs.

   d. Defendant falsified medical records relating to Mr. Gibbs' diagnosis.

   e. Defendant failed to have in place adequate policies, procedures, and oversight to ensure that patients, including Mr. Gibbs, received adequate care from sober, competent agents and/or employees of Defendant.

   f. In intentionally falsifying the medical records of Mr. Gibbs and hindering proper review of the diagnoses assigned to Mr. Gibbs;

   g. In failing to create, implement, follow, and enforce reasonable policies and procedures to prevent the falsification of Fayetteville VA patients' medical records;

    h. In failing to establish adequate measures to determine and/or evaluate accurate error rates in medical diagnoses by employees and/or agents of Defendant; and

    i. Defendant and its agents and/or employees are otherwise guilty of negligence which will be more particularly described during the course of litigation.

40. In rendering medical services, examinations, treatments, diagnoses and medical care for Mr. Gibbs, the Defendant failed to exercise the degree of skill and care that would be expected of an ordinarily prudent and competent healthcare provider under similar circumstances.

41. As a result of Defendant's failure, and through its agents and/or employees in rendering medical services, examinations, treatments, and diagnoses, Mr. Gibbs suffered severe injury, tremendous suffering and, ultimately, death.

42. Further, the U.S. Department of Veterans' Affairs, including the Fayetteville VA, incentivized medical personnel, including Dr. Levy, to report a clinical error rate of less than five percent in exchange for monetary performance bonuses. Defendants failed to put in place adequate measures to ensure that the error rates reported by medical personnel were accurate. Dr. Levy repeatedly reported to the Fayetteville VA that his error rate was below five percent – reporting during some years that he had a zero percent error rate – to receive such bonuses. In reality, Dr. Levy's error rate at the Fayetteville VA was 9.98 percent. This error rate included at least 586 level 3 misdiagnoses, which are those with "major discrepancy in diagnosis that could possibly or potentially lead to complications or damage in their health care." Sentencing Transcript, at 42:5-9. Dr. Levy was noted as an individual "who took shortcuts, who did not work up cases completely, who did not submit as many tissue sections from large major surgical cases that [he] should have, who did not follow through with the appropriate workup." Sentencing Transcript, at 137:4-23. Despite this, Dr. Levy received twenty-five percent of his performance bonus for

reporting an error rate of less than five percent, largely due to the Fayetteville VA's failure to establish adequate safeguards that could ensure the validity of the reported error rate.

43. As a result of the Defendant's systemic failures, Dr. Levy was able to "create[] [his] own rules in how [he] w[as] going to operate and perform [his] duties as a pathologist" at the Fayetteville VA. Sentencing Transcript, at 137:15-23. Ultimately, during Dr. Levy's time at the Fayetteville VA, his "cases were not worked up completely. Diagnoses were rendered on insufficient information. And some of the errors [we]re just astounding that anybody would look at a slide and even consider the diagnosis that was put into the medical record." Sentencing Transcript, at 137:24-138:3.

44. Even if the Defendant never discovered that Dr. Levy was intoxicated while practicing medicine, the errors that were brought to the Defendant's attention by the Fayetteville VA's deputy pathologist, Dr. Paul Hendrycy, was enough that the Defendant knew or should have known a major problem existed at the Fayetteville VA regarding the medical care that was being rendered due to some bad diagnoses, bad procedures, and understaffing in the pathology department.

45. Each of these negligent acts and/or omissions by Defendant, singularly and/or in combination, proximately caused the injuries and ultimate death of Mr. Gibbs.

46. As a direct and proximate result of Defendant's negligence:

   a. John Ray Gibbs was required to seek and obtain additional medical treatment, incurring substantial medical expenses as a result thereof.

   b. John Ray Gibbs's enjoyment of life was impaired, and his life span was greatly shortened.

   c. Plaintiff further alleges damages for loss of life pursuant to Ark. Code Ann. § 16-62-101(b).

  d. John Ray Gibbs did not receive appropriate care for and/or treatment and sustained serious injuries as a result.

  e. John Ray Gibbs suffered great pain and mental anguish as a direct result of the aforementioned injuries.

## COUNT II: WRONGFUL DEATH

47. Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth verbatim herein.

48. As a direct and proximate result of Defendant's acts and/or omissions, Defendant caused the death of Mr. Gibbs.

49. On August 16, 2019, a Grand Jury in the Western District of Arkansas, Fayetteville Division, indicted Dr. Levy, who acted as an agent and/or employee of the United States, for involuntary manslaughter for the death of Mr. Gibbs. Pursuant to 18 U.S.C. § 1112, the indictment alleged that Dr. Levy caused the death of Mr. Gibbs in "the commission of a lawful act which might produce death, done with wanton and reckless disregard for human life, knowing of circumstances that would reasonably cause [Dr. Levy] to foresee that his conduct might be a threat to the life" of Mr. Gibbs. *See* Superseding Indictment at 13, United States v. Robert Morris Levy, No. 5:19CR50059-001 (W.D. Ark. Aug. 16, 2019) (attached hereto as "Exhibit E").

50. On June 1, 2020, Dr. Levy entered into a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1), pleading guilty under Title 18 U.S.C. § 1112 to the involuntary manslaughter of Mr. Gibbs, admitting to rendering a diagnosis after an "incomplete" and "wholly inadequate" workup, falsifying the records of Mr. Gibbs, and, among other things, failing to conduct proper testing for Mr. Gibbs while Dr. Levy worked at the Fayetteville VA. Plea Agreement, at 9-10.

51. Plaintiff prays for compensatory damages against Defendant for the wrongful death of John Ray Gibbs. Judith Velosky, as Special Administratrix of the Estate of John Ray Gibbs,

Deceased, is entitled to damages on behalf of the Estate of the reasonable value of funeral expenses; conscious pain and suffering of John Ray Gibbs prior to his death; medical expenses attributable to his injuries and subsequent death; loss of enjoyment of life; and loss of life for John Ray Gibbs all in an amount in excess of that required by federal jurisdiction in diversity of citizenship cases.

52. Further, as a proximate result of the conduct of Defendant as more specifically alleged herein, the following heirs of John Ray Gibbs suffered mental anguish and continue to suffer mental anguish in the future as a proximate result of the death of John Ray Gibbs, said heirs being: Judith Velosky, daughter; Nathan Gibbs, son; Elane Bennett, mother; John O. Gibbs, father; Shawn Lynch, sister; David Gibbs, brother; Mark Gibbs, brother; and several grandchildren. Plaintiff sues for pecuniary injuries sustained by the beneficiaries, together with mental anguish on behalf of the beneficiaries, under Ark. Code Ann. § 16-62-102.

WHEREFORE, Plaintiff prays that the Defendant be ordered to appear and answer the Complaint herein; that upon final trial of this action Plaintiff be granted judgment against Defendant for its damages, in an amount in excess of that required for jurisdiction for compensation of medical expenses, conscious pain and suffering, loss of life, and mental anguish of the statutory heirs; that Plaintiff recovers costs of suit herein expended and interest and the legal rate on all of the above and that Plaintiff be awarded such other and further relief, both at law and at equity, to which this Court, in its discretion, may find it to be justly entitled.

Respectfully submitted,

JUDITH VELOSKY, as SPECIAL
ADMINISTRATRIX OF THE ESTATE OF
JOHN RAY GIBBS, DECEASED,
PLAINTIFF

By: *[signature]*

Monte Sharits, Ark. Bar No. 10137
Alan L. Lane, Ark. Bar No. 2003131
Matthew L. Lindsay Ark. Bar No. 2004028
ODOM LAW FIRM, P.A.
161 W. Van Asche Loop, Suite 1
(479) 442-7575
(479) 442-9008 *fax*
msharits@odomfirm.com

13