IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE VHSO FTCA LITIGATION                     Consolidated Case
                                                No. 5:21-CV-5091

**MEMORANDUM OPINION AND ORDER**

These consolidated cases involve medical malpractice and wrongful death lawsuits filed by eight Plaintiffs against the United States pursuant to the Federal Tort Claims Act ("FTCA"). Before the Court is the United States' Motion for Partial Summary Judgment, which was filed in four of the consolidated cases: *Judith Velosky v. United States*, Case No. 5:21-CV-5091, Doc. 41; *James McGuire v. United States*, Case No. 5:21-CV-5096, Doc. 39; *Douglas Kolpek v. United States*, Case No. 5:21-CV-5116, 24; and *Robert Long v. United States*, Case No. 5:21-CV-5120, Doc. 24.[1]

The United States argues it has not waived sovereign immunity as to Plaintiffs' direct negligence claims and therefore this Court lacks jurisdiction over those claims. Alternatively, the United States argues that, even if Plaintiffs' direct negligence claims are not barred by federal law, they are barred by Arkansas law because the United States has already stipulated to vicarious liability for the actions of its employee in these four cases. *See Elrod v. G&R Construction Company*, 628 S.W.2d 17 (Ark. 1982). Plaintiffs

---

[1] In deciding the United States' Motions for Partial Summary Judgment, the Court considered the Motions (*Velosky*, Doc. 41; *McGuire*, Doc. 39; *Kolpek*, Doc. 24; & *Long*, Doc. 24), Briefs in Support (*Velosky*, Doc. 46; *McGuire*, Doc. 40; *Kolpek*, Doc. 25; & *Long*, Doc. 25), Statements of Material Facts (*Velosky*, Doc. 43; *McGuire*, Doc. 41; *Kolpek*, Doc. 26; & *Long*, Doc. 26), Plaintiffs' Responses in Opposition (*Velosky*, Doc. 45; *McGuire*, Doc. 42; *Kolpek*, Doc. 27; & *Long*, Doc. 27), the United States' Replies (*Velosky*, Doc. 47; *McGuire*, Doc. 46; *Kolpek*, Doc. 29; & *Long*, Doc. 29), Plaintiffs' Sur-Replies (*Velosky*, Doc. 51; *McGuire*, Doc. 48; *Kolpek*, Doc. 31; & *Long*, Doc. 32); and the parties' supplemental briefing as to damages (Docs. 62 & 63).

oppose the Motion for Partial Summary Judgment and argue the *Elrod* rule has been legislatively abrogated, or, if it has not, that *Elrod* would only bar certain of Plaintiffs' direct negligence claims, but not all.

The Court finds it has subject matter jurisdiction over Plaintiffs' direct negligence claims. The Court further finds that Plaintiffs' direct negligence claims involving allegations of negligent hiring, supervision, and retention are barred by *Elrod*, but other direct negligence claims involving allegations of negligent policies and procedures survive the United States' stipulation to vicarious liability. Therefore, the United States' Motions for Partial Summary Judgment (*Velosky*, Doc. 41; *McGuire*, Doc. 39; *Kolpek*, Doc. 24; & *Long*, Doc. 24) are **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

These cases stem from erroneous diagnoses made by Dr. Robert Levy, a pathologist employed by the United States Department of Veterans Affairs ("VA").[2] The Plaintiffs here were injured when Dr. Levy misdiagnosed cancerous biopsy samples as benign, resulting in a delay in—or complete absence of—appropriate treatment. For years, Dr. Levy performed his duties while intoxicated, conduct which led to Plaintiffs' misdiagnoses, and for which he was criminally prosecuted in this Court. Plaintiffs were not notified of the misdiagnoses until years later. Ultimately, Plaintiffs Velosky, McGuire,

---

[2] The United States argues that its Statements of Material Facts (*Velosky*, Doc. 43; *McGuire*, Doc. 41; *Kolepk*, Doc. 26; & *Long*, Doc. 26) should be deemed admitted because Plaintiffs failed to produce a "separate, short, and concise statement" of material facts to which they contend a genuine dispute exists, as required by Local Rule 56.1(b). Based on the factual summaries included in Plaintiffs' Responses, there are no *material* factual disputes between the United States and Plaintiffs with regard to the instant Motions and deeming the United States' statements of facts admitted would not alter the Court's legal analysis in any way.

and Kolpek bring suit on behalf of deceased family members, alleging the delay in cancer treatment caused their family members' deaths. Their causes of action include medical malpractice and wrongful death. Plaintiff Long brings a medical malpractice action on his own behalf. He alleges Dr. Levy's misdiagnosis caused a delay in his cancer treatment and other injuries resulting therefrom. Plaintiffs seek damages for medical expenses, pain and suffering, mental anguish, and, for the first three, loss of life.

Each complaint specifically alleges the United States is vicariously liable for the negligence of Dr. Levy "[i]n failing to properly diagnose" the Plaintiffs. (*Velosky*, Doc. 56, ¶ 58(t); *McGuire*, Doc. 10, ¶ 52(o); *Kolpek*, Doc. 2, ¶ 51(o); *Long*, Doc. 45, ¶ 49(s)). The United States stipulated to vicarious liability in these four cases with respect to scope of employment, breach of standard of care, and causation. More specifically, the United States admitted Dr. Levy was acting in the course and scope of his federal employment with the VA at the time he erroneously diagnosed the Plaintiffs; that Dr. Levy did, in fact, erroneously diagnose the Plaintiffs; and the misdiagnoses deviated from the applicable standard of care and proximately caused the Plaintiffs' injuries.

Plaintiffs further state numerous allegations of direct negligence against the VA itself related to alleged negligent hiring, retention, and supervision of Dr. Levy, as well as the VA's alleged failure to establish adequate policies and procedures to prevent the harm Plaintiffs suffered.[3]

For example, each complaint asserts the United States was, among other things, directly negligent:

---

[3] Plaintiffs Velosky and Long recently amended their complaints to add more direct negligence allegations. (*Velosky*, Doc. 56; *Long*, Doc. 45).

3

> a. In the hiring, retention, and supervision of Dr. Levy in light of his history of known alcohol and substance abuse while on the job;
>
> b. In failing to establish sufficient facility quality management procedures to oversee physicians;
> . . .
>
> d. In failing to appropriately and adequately investigate numerous claims of employee impairment at work;
> . . . .

(*Velosky*, Doc. 56, ¶ 58; *McGuire*, Doc. 10, ¶ 52; *Kolpek*, Doc. 2, ¶ 51; *Long*, Doc. 45, ¶ 49).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of showing no genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(c); *Commodity Futures Trading Comm'n v. Morse*, 762 F.2d 60, 63 (8th Cir. 1985); *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 601 (8th Cir. 1999). Once the movant has met its burden, the nonmovant must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(c)).

For there to be a genuine issue of material fact precluding summary judgment, the nonmovant "must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

4

(1986)). To meet its burden, "[t]he nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### III. DISCUSSION

#### A. This Court Retains Subject Matter Jurisdiction Over Plaintiffs' Direct Negligence Claims

The United States argues this Court lacks subject matter jurisdiction over Plaintiffs' direct negligence claims under controlling Supreme Court and Eighth Circuit precedent.[4] More specifically, the United States argues that to be held liable for direct negligence under the FTCA, it must owe an independent duty to Plaintiffs unrelated to the employment relationship between Dr. Levy and the United States, and that no such independent duty exists here. Thus, the United States argues, it has not waived sovereign immunity for Plaintiffs' direct negligence claims, and the Court lacks jurisdiction over those claims.

Federal courts have exclusive jurisdiction over FTCA claims. 28 U.S.C. § 1346(b)(1). This jurisdiction applies only to the extent that the FTCA has waived the United States' sovereign immunity. *Brownback v. King*, 141 S. Ct. 740, 746 (2021). While the United States is liable "in the same manner and to the same extent as a private individual under like circumstances" under the FTCA, 28 U.S.C. § 2674, it is "nevertheless, immune if an exception applies," *Hart v. United States*, 630 F.3d 1085,

---

[4] This argument was raised for the first time in the United States' reply briefs. The Court nevertheless addresses it because it raises a jurisdictional question.

5

1088 (8th Cir. 2011). The FTCA's intentional tort exception bars claims involving certain intentional torts committed by federal employees while acting in the scope of their employment. 28 U.S.C. § 2680(h).

The United States relies on *Sheridan v. United States*, 487 U.S. 392 (1988), and *Billingsley v. United States*, 251 F.3d 696 (8th Cir. 2001), for its argument. *Sheridan* involved an off-duty Navy employee who shot a civilian while intoxicated and the on-duty employees who failed to take appropriate action to prevent the off-duty employee from harming others. *Sheridan*, 487 U.S. at 401–03. The civilian brought claims under the FTCA, alleging the injuries were caused by the United States' negligence. While the district court dismissed the claims as barred by the intentional tort exception, the Supreme Court ultimately allowed a cause of action for direct negligence to proceed because the off-duty Navy employee was not acting within the scope of his employment at the time of the shooting. The United States was held to be potentially liable because it had "a duty to prevent a foreseeably dangerous individual from wandering about unattended." *Id.* at 403. The Court found that "neither [the off-duty employee's] employment status nor his state of mind" had any bearing on the plaintiff's request for damages and that the intentional tort exception did not apply because the cause of action was based on the United States' breach of a separate, independent legal duty. *Id.*

*Billingsley* involved battery committed by a federal employee in the presence of Job Corps enrollees and a Job Corps employee. *Billingsley*, 251 F.3d at 697. The plaintiff appealed the district court's dismissal of his negligent supervision claim on the ground that it should not have been barred by the intentional tort exception. The Eighth Circuit found the plaintiff may have had a cause of action under *Sheridan* but addressed the

6

"issue as to when the government is liable for its negligent oversight of its employees who *are* acting within the scope of employment . . . ." *Id.* at 698. The court held that, if the employee-tortfeasor was, in fact, acting within the scope of his employment when he battered the plaintiff, the United States may still be liable for direct negligence based on "an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." *Id.* (quoting *Leleux v. United States*, 178 F.3d 750, 757 (5th Cir. 1999)). "The government would not be found liable, however, for its negligent hiring and supervision of [defendant], as such a claim pertains to the government's employment relationship with [defendant]." *Id.*

Contrary to the United States' interpretation, *Sheridan*, as applied in *Billingsley*, stands only for the proposition that, when a federal employee commits an *intentional* tort while acting in the course and scope of his employment, the United States may only be liable for direct negligence if that negligence arose out of an "independent, antecedent duty unrelated to the employment relationship" between the employee-tortfeasor and the United States. *Billingsley*, 251 F.3d at 698 (citing *Leleux v. United States*, 178 F.3d 750, 757 (5th Cir. 1999)); *see also Sheridan*, 487 U.S. at 402. This rule is intended to prevent plaintiffs from pleading direct negligence claims in order to skirt the intentional tort exception to FTCA liability. The United States has not cited any cases where the *Sheridan* and *Billingsley* reasoning has been applied to circumstances involving direct negligence allegations and a United States' employee who committed an *unintentional* tort. In that instance, there would be no bar to vicarious liability, no concern about circumvention of the FTCA's exceptions, and no reason to require an "independent, antecedent duty unrelated to the employment relationship" before direct liability can attach.

7

Here, Plaintiffs have not alleged any intentional tort by Dr. Levy or any other federal employee, and the cases cited by the United States provide no applicable guidance. The United States has therefore waived sovereign immunity for Plaintiffs' direct negligence claims, and the Court has subject matter jurisdiction over those claims.

### B. Plaintiffs' Direct Negligence Claims are Not Barred by Arkansas Law

In the alternative, the United States argues Plaintiffs' negligence claims are barred by Arkansas law based on the Arkansas Supreme Court's decision in *Elrod*, 628 S.W.2d 17. In *Elrod*, the Supreme Court found a plaintiff could not proceed on negligent entrustment where the defendant admitted liability under the doctrine of *respondeat superior*. *Id.* at 18–19. The court there opted to follow the view of the majority of jurisdictions, "which allows plaintiffs to proceed on only one theory of recovery in cases where liability has been admitted as to one theory of recovery." *Id.* at 19.[5]

The United States argues that, because it has stipulated to vicarious liability with regard to Dr. Levy's negligent conduct, *Elrod* bars Plaintiffs from also pursuing a claim of direct negligence against the United States. In response, Plaintiffs first argue that *Elrod* has been legislatively abrogated by the enactment of Arkansas's Civil Justice Reform Act and modification of the Uniform Contribution Among Tortfeasors Act. The Court finds this argument to be a novel question of state law—one more appropriate for the state courts to decide. Thus, the Court finds it appropriate to abstain as to this argument. *See Roper v. City of Pine Bluff*, 673 F. Supp. 329, 331 (E.D. Ark. 1987) (abstaining from considering

---

[5] The United States recognizes there is a limited exception to the *Elrod* rule where a plaintiff alleges a valid claim of punitive damages. *Wheeler v. Carlton*, WL 30261, at *12 (E.D. Ark. Jan. 4, 2007). However, the punitive damages exception is inapplicable here, as Plaintiffs are barred from recovering such damages under the FTCA. *See* 28 U.S.C. § 2674.

civil rights claim that involved questions of state law more appropriate for state courts to decide).

Plaintiffs next argue that even if *Elrod* hasn't been legislatively abrogated, it does not bar *all* of their direct negligence claims. Federal district judges in Arkansas have previously applied *Elrod* to bar claims of negligent entrustment, hiring, and retention where employers admitted vicarious liability, and punitive damages were unavailable. *See, e.g., Moore v. Daniel Enterprises, Inc.*, WL 1155948, at *3 (W.D. Ark. Apr. 28, 2006); *Wheeler*, WL 30261, at *11. Claims of negligent training, supervision, and monitoring have similarly been barred by federal district courts in Arkansas. *See Perry v. Stevens Transp., Inc.*, WL 2805026, at *5 (E.D. Ark. July 9, 2012) (finding that, because plaintiff could not recover punitive damages on its independent claims of negligent hiring, training, supervision, monitoring, and retention, those claims were barred under *Elrod* and *Wheeler*).

Because negligent entrustment, hiring, supervision, and retention claims are simply a means of imputing liability, like *respondeat superior*, pursuing one claim after the other has been admitted is redundant. *See Gibson v. Jensen*, WL 5067497, at *3 (D. Neb. July 17, 2017) (finding claims for negligent hiring, retention, and supervision, like a claim for *respondeat superior*, "are dependent on, and derivative of, the employee's underlying negligence"). Thus, these claims are barred under *Elrod. See McLane v. Rich Transp., Inc.*, WL 3257658 (E.D. Ark. Aug. 9, 2012) (barring claims pertaining to negligent hiring and retention where employer admitted vicarious liability because the claims did not support a claim for punitive damages to survive summary judgment under *Elrod* and *Wheeler*); *Perry*, 2012 WL 2805026, at *5.

9

However, the rationale barring claims related to hiring, retention, and supervision has not been extended to direct negligence claims involving policies and procedures. *See Regions Bank v. White*, WL 3148732, at *4–5 (E.D. Ark. Sept. 24, 2009) (finding *Elrod* inapplicable to negligence claims regarding an employer's policies and procedures and allowing plaintiff to proceed on those claims so long as they did not assert negligent hiring, retention, or entrustment); *McLane,* 2012 WL 3257658, at *5 (dismissing claims involving negligent hiring and retention against defendant employer, who admitted vicarious liability, but allowing negligence claims involving failure to train, educate, prepare, and set policies to proceed); *Crouch v. Master Woodcraft Cabinetry, LLC*, WL 4155583 (E.D. Ark. Sept. 13, 2021) (denying motion for partial summary judgment on direct negligence claims involving failure to train, educate, prepare, and set policies where employer admitted vicarious liability).

Here, Plaintiffs bring claims for negligent hiring, retention, and supervision. Those claims are barred under *Elrod* because the United States has stipulated to vicarious liability. However, Plaintiffs may continue to pursue their allegations that the United States failed to establish or follow certain policies and procedures that would have prevented the harm the befell them.

### C. Damages

The FTCA provides that "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Federal courts therefore apply state substantive law—Arkansas's, in this case—to determine liability under the FTCA. *See Wilcox v. United States*, 881 F.3d 667, 672 (8th Cir. 2018). Under Arkansas law, Plaintiffs are free to simultaneously pursue multiple

theories of liability—both vicarious and direct negligence—but they are entitled to only one recovery for their injuries. *See Lemon v. Laws*, 313 Ark. 11, 15 (1993) (citing 1 Howard W. Brill & Christian H. Brill, Arkansas Law of Damages § 2-6 (2d ed. 1990)). And under the FTCA, Plaintiffs may only recover compensatory damages—punitive damages are expressly barred. *See* 28 U.S.C. § 2674. In the four instant cases, the United States has stipulated that Dr. Levy deviated from the applicable standard of care and caused Plaintiffs' injuries and deaths. Therefore, the Court ordered the parties to submit supplemental briefing as to whether—given the United States' stipulations to vicarious liability—Plaintiffs' direct negligence claims will have any effect on their potential recovery.

Plaintiffs argue their "direct negligence claims significantly increase[] the extent of the mental anguish suffered by the veterans and/or their beneficiaries" because of "the extreme and egregious institutional misconduct of" the VA itself. (Doc. 62, p. 2). Plaintiffs contend that "Arkansas law is sufficiently broad to allow the Court to consider the Plaintiffs' and their beneficiaries' outrage, anger, or disgust suffered as a result of Defendant's egregious misconduct in awarding mental anguish damages." *Id.*

Plaintiffs' argument fails on two fronts. First, under Arkansas law, the tortfeasor's culpability does not affect the computation of compensatory damages. Second, the FTCA's bar on punitive damages prohibits the Court from considering the alleged egregiousness of the United States' conduct when assessing damages.

In personal injury actions under Arkansas law, plaintiffs may recover compensatory damages for pain and suffering—and any resulting mental anguish—proximately caused by the negligence of the tortfeasor. *See Avery v. Ward*, 326 Ark. 829, 837 (1996). Mental anguish damages for the injured party, while difficult to precisely calculate, stem from the

11

anguish caused by the injury itself. 1 Howard W. Brill & Christian H. Brill, Arkansas Law of Damages § 29:2 (Nov. 2021); *see also Builder's Transp., Inc. v. Wilson*, 323 Ark. 327, 331 (1996) ("[The plaintiff] also presented ample proof of mental anguish *as a result of the injuries* he suffered in the collision." (emphasis added)).

Damages for the beneficiaries of a deceased party are governed by Arkansas's wrongful death statute.[6] That statute allows family members to recover "for pecuniary injuries, including a spouse's loss of the services and companionship of a deceased spouse and any mental anguish *resulting from the death* to the surviving spouse and beneficiaries of the deceased." Ark. Code. Ann. § 16-62-102(f)(1) (emphasis added). Mental anguish damages "include grief normally associated with the loss of a loved one." *Id.* § 16-62-102(f)(2). In evaluating the potential excessiveness of mental anguish awards in wrongful death cases, Arkansas appellate courts look to numerous factors related to the nature and extent of the relationship between the decedent and the beneficiary and the beneficiary's emotional and physical reaction to the death. *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 744 (2003).

Here, the amount of mental anguish damages suffered by these veterans and their beneficiaries will be determined by the suffering that resulted from the veterans' illnesses, deaths, and their beneficiaries' grief that resulted from those deaths. That amount is not variable based on the degree to which the United States was directly culpable in Dr. Levy's misdiagnoses. Plaintiffs' "anger, disgust, and despair" experienced after learning of "the Fayetteville VA's intentional conduct," (Doc. 62, p. 10), is a step removed from Plaintiffs' relationships with the decedents or their reactions to their deaths. These

---

[6] Three of the four instant cases include wrongful death claims.

reactions are also not the type of "grief normally associated" with losing a loved one. Ark. Code Ann. § 16-62-102(f)(2). The purpose of compensatory damages is to "compensate the plaintiff for the injury inflicted," *Bankston v. Pulaski Cnty. Sch. Dist.*, 281 Ark. 476, 479 (1984), not to compensate a plaintiff's "anger" and "disgust" at the defendant's conduct.

Admittedly, plaintiffs and finders of fact alike may find it difficult to disentangle the emotions caused by an injury or death from the emotions caused by the nature of the tortfeasor's actions. But this Court, when it comes time to assess damages in these cases, will follow Arkansas law and award only those damages for mental anguish that were caused by the injuries and deaths, not the emotional response caused by the "intentional conduct" of the United States. As a result, should Plaintiffs recover compensatory damages for the stipulated negligence of Dr. Levy, any mental anguish damages based on their direct negligence claims against the United States would be duplicative and unrecoverable.

Even if the nature of the United States' conduct was a factor the Court could consider in assessing mental anguish damages under Arkansas law, the FTCA's bar on punitive damages prevents the Court from doing so. Plaintiffs argue "there is no Arkansas case – state or federal – that prohibits a trier of fact from considering the conduct of a defendant as an element of mental anguish damages." (Doc. 62, p. 2). But "considering the conduct of a defendant" is precisely what underlies an award of punitive damages. The United States Supreme Court has held that punitive damages under the FTCA follow the common law definition, which "focuses on the nature of the defendant's conduct." *Molzof v. United States*, 502 U.S. 301, 307 (1992). It is this focus that makes them "different in kind from" compensatory damages. *Id.* "[T]he function of punitive damages is

not to compensate but to punish the defendant for his wrong," *Bayer CropScience LP v. Schafer*, 2011 Ark. 518, 12 (2011), and they are "based upon the degree of the defendant's culpability," *Molzof*, 502 U.S. at 307 (quoting *Massachusetts Bonding & Ins. Co. v. United States*, 352 U.S. 128, 133 (1956)).

In arguing the Court must consider their "anger and disgust at the reprehensible conduct of the Fayetteville VA" in assessing mental anguish damages, (Doc. 62, p. 8), Plaintiffs ask the Court to award damages based on the nature of the United States' conduct and the degree of its culpability. The Court sees no daylight between compensating Plaintiffs' "anger and disgust" at the United States' conduct and impermissibly punishing the United States for that conduct. Plaintiffs cannot circumvent the FTCA's punitive damages bar by repackaging punitive damages as mental anguish damages.

Nevertheless, the Court recognizes it has not seen all the evidence in these cases and no trial has taken place. In addition, although the United States has stipulated in these four cases that Dr. Levy breached the standard of care and caused Plaintiffs' injuries, the United States has also suggested it may contest vicarious liability based on the FTCA's statute of limitations. *See, e.g.*, *Velosky*, Doc. 39, p. 2. The statute of limitations analysis for Plaintiffs' direct negligence claims may differ from that for their vicarious liability claims. Plaintiffs therefore have reason—for the time being—to continue pursuing direct negligence claims regardless of whether those claims affect their compensatory damages. Plaintiffs may proceed on certain of their direct negligence claims, as detailed above, but the Court simply notes that "the nature of the [United

14

States'] conduct" cannot be considered when assessing Plaintiffs' damages. *Molzof*, 502 U.S. at 307.

## IV. CONCLUSION

For the reasons stated, the United States' Motions for Partial Summary Judgment (*Velosky*, Doc. 41; *McGuire*, Doc. 39; *Kolpek*, Doc. 24; & *Long*, Doc. 24) are **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED** on this 31st day of May, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

15