IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JUDITH VELOSKY, as**
**SPECIAL ADMINISTRATRIX**
**OF THE ESTATE OF**
**JOHN RAY GIBBS, DECEASED**                                                **PLAINTIFF**

v.                              CASE NO. 5:21-CV-5091

**UNITED STATES OF AMERICA**                                               **DEFENDANT**

**OPINION AND ORDER DENYING MOTION TO COMPEL**

Before the Court is the Motion to Compel (Doc. 77) filed by Plaintiff Judith Velosky, on behalf of the estate of John Ray Gibbs, deceased. Defendant the United States of America has filed a Response in Opposition (Doc. 84). Because the materials sought by Plaintiff are protected from disclosure by a statutory privilege, the Motion is **DENIED**.

**I.   BACKGROUND**

John Ray Gibbs died on July 26, 2014, from non-small cell carcinoma. Mr. Gibbs died after his cancer was misdiagnosed by Dr. Robert Levy, a pathologist at the Veterans Health Care System of the Ozarks ("VHSO"), a United States Department of Veterans Affairs ("VA") medical facility. Plaintiff has sued Defendant under the Federal Tort Claims Act ("FTCA") for Dr. Levy's negligence and for the failure of the VA to prevent Dr. Levy's negligence. Defendant has stipulated that Dr. Levy twice misdiagnosed Mr. Gibbs's cancer, those misdiagnoses fell below the applicable standard of care and proximately caused Mr. Gibbs's injuries and death, and Dr. Levy was acting in the course and scope of his employment with the VA when he misdiagnosed Mr. Gibbs. *See* Doc. 39. Therefore, the remaining issues in this case are whether Plaintiff has satisfied the FTCA's statute of

1

limitations and, if so, the amount of damages Mr. Gibbs's estate and family members may recover. The statute of limitations is at the center of this discovery dispute.

Defendant's statute of limitations defense will purportedly rest on Defendant's contention that on July 14, 2014, a VA doctor informed Mr. Gibbs's family of the misdiagnoses that delayed Mr. Gibbs receiving proper care. Because the FTCA requires an injured party to file an administrative tort claim within two years of learning of the negligent acts causing their injury, *Reilly v. United States*, 513 F.2d 147, 148 (8th Cir. 1975), Defendant contends the statute of limitations lapsed well before Plaintiff filed her administrative claim in June 2020.

In response to Plaintiff's requests for production of documents involving the VA's care of Mr. Gibbs, Defendant—after significant delay—informed Plaintiff that it was "withholding Root Cause Analysis, Case Number TF3042, Station 564, Fayetteville, AR on the basis that it is confidential and privileged pursuant to 38 U.S.C. § 5705." (Doc. 77, p. 3). Under 38 U.S.C. § 5705, "Records and documents created by the [VA] as part of a medical quality-assurance program . . . are confidential and privileged and may not be disclosed to any person or entity except" in specific circumstances. 38 U.S.C. § 5705(a).

A root cause analysis ("RCA") "is a process for identifying the basic or contributing causal factors that underlie variations in performance associated with adverse clinical events or close calls." (Doc. 84-1, p. 5). In other words, if an "adverse clinical event" occurs—such as failure to diagnose and properly treat a patient's cancer—the VA medical facility may put together a team to investigate and determine the cause of the facility's failures. The VHSO conducted an RCA to determine why an addendum to Mr. Gibbs's pathology reports was not communicated to his treating physicians, and the RCA team

2

produced a report detailing its findings. Defendant contends that report is protected from disclosure by the quality-assurance privilege at 38 U.S.C. § 5705. Plaintiff contends that privilege does not apply to the Gibbs RCA because Defendant has failed to show the RCA was designated as a privileged activity at the outset of the review, as required by the statute's implementing regulations.

Plaintiff further contends the RCA is relevant to the statute of limitations issue because, in asserting that defense, Defendant intends to rely on an Institutional Disclosure of Adverse Event. That Disclosure states Dr. Drake Rippelmeyer had a discussion with Mr. Gibbs's family on July 15, 2014, regarding the delay in treating Mr. Gibbs's cancer, his prognosis, the process for filing a tort claim, and the RCA process. *See* Doc. 77-1. For Plaintiff, the mention of the RCA in the Disclosure indicates the RCA may include information about the extent to which Dr. Ripplemeyer informed Mr. Gibbs's family of the nature of Dr. Levy's misdiagnoses.

After the parties unsuccessfully conferred on this issue, they sought Court intervention. The Court took up this matter at a discovery conference on August 26, 2022. After hearing argument, the Court found it could not decide the privilege issue on the materials before it and instructed Plaintiff to file a motion to compel if she wished to pursue the matter further. The Court also ordered Defendant to provide the RCA report to Magistrate Judge Christy Comstock for *in camera* review. Judge Comstock issued an Independent Review and Assessment of the report (Doc. 79). She found "[t]he RCA neither solicits information for nor references any communication of any kind occurring between or amongst Dr. Rippelmeyer and John Ray Gibbs and/or any member of Mr. Gibbs' family." *Id.* at 2.

The parties submit various pieces of evidence to aid the Court in deciding the Motion. The key document is a memorandum (Doc. 77-5) issued in July 2014, which commissioned the RCA of Mr. Gibbs's treatment ("the Charter Memorandum"). The Charter Memorandum is from the medical director of the VHSO and is addressed to Bud Mosely, a VHSO laboratory supervisor, informing him that he has been selected as team leader of the Gibbs RCA. The Memorandum states "[a]ll RCAs are quality assurance, focused review processes, and the team products (e.g. interviews, preliminary and final reports, etc.) are considered confidential, privileged and protected under 38 USC 5705 and its implementing regulations." *Id.* at 1. The Memorandum further states that Mr. Mosely "will be contacted soon to discuss the team meeting calendar." *Id.* A similar memorandum would have been sent to each RCA team member.

The Charter Memorandum in the record is an unsigned version; the VHSO destroyed the original, signed copy. The Memorandum is dated July 15, 2014. However, the document's metadata states it was created and last edited on July 22, 2014.

## II.  DISCUSSION

A document must be part of a "medical quality-assurance program" to qualify for the quality-assurance privilege. 38 U.S.C. § 5705(a). The statute's implementing regulations define "medical quality-assurance program," in relevant part, as, "Focused reviews which address specific issues or incidents and which are designated by the reviewing office at the outset of the review as protected by 38 U.S.C. 5705." 38 C.F.R. § 17.501(a)(2). In addition, the VA must categorize a type of activity as a "focused review" in advance. 38 C.F.R. § 17.501(b). Here, the VA has long categorized RCAs as focused reviews that are subject to the quality-assurance privilege. *See* Doc. 84-1, p. 5. The only

4

issue, then, is whether the VHSO designated this particular RCA as privileged "at the outset of the review." 38 C.F.R. § 17.501(a)(2).

The party asserting a privilege bears the burden of establishing that the privilege applies. *United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020). In the context of the quality-assurance privilege, Defendant bears the burden to show the RCA was designated as a privileged activity at the outset of the inquiry. *See Bethel v. United States ex rel. Veterans Admin. Med. Ctr. of Denver*, 242 F.R.D. 580, 586 (D. Colo. 2007). To meet its burden, Defendant relies on the Charter Memorandum; the testimony and declaration of Mary Wilcox, a VHSO patient safety manager; the declaration of Glenda Bruckner, the patient safety manager who oversaw the Gibbs RCA in 2014; and a series of emails from July 2014 between VHSO staff that appear to schedule the meeting dates for the RCA team.

Plaintiff argues the Court should not credit the Charter Memorandum as establishing the quality-assurance privilege because the original has been destroyed, the VA's own policies require a signed charter memorandum for the privilege to attach, the document's metadata shows it was created after the RCA began, and the document's metadata shows it was never printed. Plaintiff contends that because Defendant cannot produce a signed charter memorandum that was issued prior to the start of the RCA, it cannot meet its burden.

The Court finds the Charter Memorandum is an authentic document that was produced by the VHSO in July 2014. Ms. Wilcox has so testified and Plaintiff does not meaningfully contest this point. Defendant maintains the Charter Memorandum was signed by the VHSO medical director, and there is no statutory or regulatory requirement

that Defendant prove the document was signed in order for the privilege to apply. The Court places little weight on the document lacking metadata showing it was printed in July 2014—such metadata would not exist if the document was emailed to another party who then printed and signed it. While it would have been prudent for the VHSO to have maintained a signed copy of the Charter Memorandum, the Court is not prepared to disregard the Memorandum on this basis. Based on the Charter Memorandum itself, the testimony of Ms. Wilcox, and the declaration of Ms. Bruckner, Defendant has established that the Charter Memorandum was issued to the RCA team in July 2014. Moreover, the Court concludes the Charter Memorandum sufficiently designated the RCA as a privileged activity.

The only remaining issue is whether Defendant has shown that the document was issued "at the outset of the" RCA. Defendant concedes the Charter Memorandum was created on July 22, 2014, notwithstanding the document being dated July 15. Based on the July 15 date included in the Charter Memorandum, Plaintiff argues the RCA began on July 15, and therefore, the Charter Memorandum was issued after the outset of the review. The Court disagrees.

While the record does not reflect the precise start date of the RCA, the evidence shows that July 22, 2014—the date the Charter Memorandum was created—was within the period of time that would constitute the outset of the RCA process. Ms. Wilcox testified that RCAs are initiated by the signed charter memorandum being delivered to the RCA team members. *See* Doc. 84-2, p. 6. This delivery takes place at or before the team's first meeting. *Id.* at 7. Prior to the first meeting, team members may review the record and develop questions on their own, but no interviews take place before the first meeting. *Id.*

Ms. Buckner's declaration confirms Ms. Wilcox's description of the RCA process. *See* Doc. 84-4.

Here, the evidence suggests the first RCA team meeting was July 28, 2014, and there is no indication that the RCA team met before July 22. Email traffic from July 23, the day after the Charter Memorandum was created, shows a proposed meeting schedule for an RCA titled "Communicating Pathology Reports," which appears to be the Gibbs RCA. The RCA team meetings were scheduled for July 28, July 30, July 31, August 4, August 6, and August 7. *See* Doc. 85-5, p. 1.

The Court declines to adopt the narrow reading of "outset" offered by Plaintiff, a reading which would require Defendant to prove the RCA was designated as a privileged activity on July 15 because that is the date listed in the Charter Memorandum. Even assuming July 15 is the day the RCA was first approved, the evidence indicates the RCA started in earnest at the team's first meeting.

Having considered the Charter Memorandum, the statements of VHSO employees, and the other documentary evidence, the Court finds the Gibbs RCA was properly designated as a privileged quality-assurance review at the outset of the process. As a result, any report generated by the RCA process is not discoverable in this case.

Finally, the Court notes that, even if the RCA does not qualify for quality-assurance privilege, the document is not relevant to the issues Plaintiff seeks to use it for. Judge Comstock's analysis indicates the document does not reflect any communications between the VHSO and Mr. Gibbs's family, does not include Dr. Ripplemeyer's name, and would not be relevant to the statute of limitations issue.

7

## III. CONCLUSION

For these reasons, the Motion to Compel (Doc. 77) is **DENIED**.

**IT IS SO ORDERED** on this 7th day of October, 2022.

                                                                                         TIMOTHY L. BROOKS
                                                                                         UNITED STATES DISTRICT JUDGE